UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE PARISH OF PLAQUEMINES                    CIVIL ACTION

VERSUS                                        NO: 18-5228

NORTHCOAST OIL CO., ET AL.                    SECTION: "A" (2)

## ORDER AND REASONS

Before the Court is a **Motion to Remand (Rec. Doc. 62)** filed jointly by the

plaintiff, the Parish of Plaquemines, and the plaintiff-intervenors the State of Louisiana,

through the Louisiana Department of Natural Resources, Office of Coastal

Management, and its Secretary, Thomas F. Harris, and the State of Louisiana *ex rel.*

Jeff Landry, Attorney General. The Removing Defendants oppose the motion.[1]  The

motion, submitted for consideration on February 1, 2023, is before the Court on the

briefs without oral argument.

For the reasons that follow, the Court concludes that the Motion to Remand filed

in this case should be GRANTED and this civil action REMANDED to state court.

**I.**

This case is one of numerous cases filed in state court against a legion of oil and

gas companies under a Louisiana state law called the State and Local Coastal

Resources Management Act of 1978, La. R.S. § 49:214.21, *et seq.*, ("SLCRMA"), along

---

[1]  The Removing Defendants in this action are Chevron U.S.A. Inc., Chevron U.S.A. Holdings Inc., Chevron Pipe Line Company, and BP Products North America Inc. (Rec. Doc. 1, Notice of Removal at 1).

with the state and local regulations, guidelines, ordinances, and orders promulgated thereunder. The SLCRMA regulates certain "uses" within the Coastal Zone of Louisiana through a permitting system and provides a cause of action against defendants who violate a state-issued coastal use permit or fail to obtain a required coastal use permit. The several lawsuits pertain to the defendants' decades-long oil production activities on the Louisiana coast.

Each individual lawsuit challenges oil production activities occurring in a specifically defined area, the "Operational Area," of the Louisiana coast. The term "Operational Area" is used throughout the plaintiffs' petition to describe the geographic extent of the area within which the complained-of operations and activities at issue in this action occurred. The Operational Area at issue in this case lies in West Bay Oil and Gas Field located in Plaquemines Parish.

Twenty-eight of the cases were filed by Plaquemines and Jefferson Parishes in 2013 and then removed to this Court on numerous grounds, including diversity, OCSLA, maritime and federal question jurisdiction. Of those 2013 cases, the judges of this district designated *Plaquemines Parish v. Total Petrochemical & Refining USA, Inc.*, et al., 13-cv-6693, as the lead case. On December 1, 2014, this Court entered its Order and Reasons remanding the case to state court for lack of subject matter jurisdiction. *Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc.*, 64 F. Supp. 3d 872 (E.D. La. 2014). After that decision all of the other parish cases were eventually remanded by the judges presiding over them.

The cases then progressed in state court until May 2018 when the defendants re-

removed the cases on grounds of federal officer removal and federal question

jurisdiction.[2]  Although the SLCRMA did not go into effect until 1980, the plaintiffs'

allegations (as clarified by a preliminary expert report produced in 2018—the *Rozel*

report) triggered the potential applicability of the statute's grandfathering provision, La.

R.S. § 49:214.34(C)(2), which placed at issue pre-SLCRMA conduct, some of which

occurred during World War II. The defendants were convinced that their World War II

era activities presented a new opportunity for removal, *i.e.*, federal officer removal.[3]

Although all of the SLCRMA cases were re-removed in 2018, only a subset of them

actually involved World War II era activities.

　　This time the judges of this district designated *Plaquemines Parish v. Riverwood*

*Production Co., Inc., et al.*, 18-cv-5217, assigned to the late Judge Martin L.C. Feldman,

as the lead case ("*Riverwood*"). This Court (like the other judges of this district) stayed

---

[2]  Federal officer removal was a new theory supporting removal but federal question jurisdiction had been raised in the 2013 removals and rejected. As a general rule, once a case is remanded to state court, a defendant is precluded only from seeking a second removal on the same ground. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996). The prohibition against removal "on the same ground" does not concern the theory on which federal jurisdiction exists, *i.e.*, federal question or diversity jurisdiction, but rather the pleading or event that made the case removable. *Id.* (citing *O'Bryan v. Chandler*, 496 F.2d 403, 410 (10th Cir. 1974)). Even though the Court rejected federal question jurisdiction in 2014, the defendants identified a new basis for federal question jurisdiction when they re-removed the SLCRMA cases in 2018. That new basis for federal question jurisdiction has now been firmly rejected by the Fifth Circuit foreclosing federal question jurisdiction as a basis for removal in any of the pending SLCRMA cases.

[3]  World War II era activities have become relevant to this case because the SLCRMA's grandfathering clause exempts from the coastal use permitting scheme activities "legally commenced or established" prior to the effective date [1980] of the coastal use permit program, La. R.S. § 49:214.34(C)(2). The plaintiffs' contention is that the defendants' pre-1980 activities, including those dating back to the 1940s, were not "legally commenced" thereby depriving the defendants of the exemption. Therefore, the defendants' pre-SLCRMA conduct is relevant to the plaintiffs' SLCRMA causes of action in this case.

the six cases assigned to it (including this one) pending the decision in *Riverwood*.[4]  A similar approach was adopted in the Western District of Louisiana because several SLCRMA cases had been removed in that district too. The lead case chosen in the Western District of Louisiana was *Cameron Parish v. Auster Oil & Gas, Inc.,* 18-cv-0677 ("*Auster*"). The cases in this district remained stayed pending the outcomes in *Riverwood* and *Auster*, at times over the plaintiffs' strenuous objections, which included seeking mandamus relief. The defendants had persuasively argued, when opposing the plaintiffs' motions to re-open the cases, that allowing *Riverwood* to proceed to conclusion before taking up any of the other motions to remand in the SLCRMA cases would be beneficial because the cases had common issues.

On May 28, 2019, Judge Feldman issued a comprehensive Order and Reasons in *Riverwood* that explained his conclusion that the case should be remanded to state court. Judge Feldman was persuaded that the removal was untimely; and even if it was timely, the defendants had failed to establish that the requirements for federal officer removal jurisdiction were satisfied, or that the case involved any specific federal issue sufficient to support federal question jurisdiction. *Parish of Plaquemines v. Riverwood Prod. Co.*, No. 18-5217, 2019 WL 2271118 (E. D. La. May 28, 2019) (Feldman, J.). The defendants appealed *Riverwood*, and the Fifth Circuit consolidated it with the appeal in *Auster*, where the presiding judge had likewise granted the plaintiffs' motion to remand. Initially the Fifth Circuit affirmed Judge Feldman's decision based on timeliness

---

[4] Most of the cases had been stayed previously at the defendants' behest because the defendants sought to have the Judicial Panel on Multidistrict Litigation coordinate proceedings in the various SLCRMA cases. The Panel denied the request.

grounds, mooting any other jurisdictional issues.[5]  *Parish of Plaquemines v. Chevron USA, Inc.*, 969 F.3d 502 (5th Cir. 2020) (withdrawn and superseded). Although en banc rehearing was denied, the panel granted rehearing, withdrew its earlier opinion, and superseded it with one reversing *Riverwood* on the issue of timeliness, but affirming Judge Feldman on the finding that no federal question jurisdiction existed to support removal on that basis.[6]  *Parish of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362 (5th Cir. 2021) ("*Plaquemines I*").

As to the potential for federal officer removal jurisdiction, the Fifth Circuit reversed Judge Feldman, not because he had erred, but solely because the en banc court had decided *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020), after Judge Feldman had issued his decision in *Riverwood*.[7]  The Fifth Circuit remanded the *Riverwood* case to Judge Feldman to determine, now with the benefit of *Latiolais*,

---

[5]  Judge Robert R. Summerhays, who presided over *Auster* in the Western District of Louisiana, had concluded that the removal was timely but that neither federal question jurisdiction nor federal officer removal jurisdiction applied. *Parish of Cameron v. Auster Oil & Gas Inc.*, 420 F. Supp. 3d 532 (W.D. La. 2019).

[6]  *Plaquemines I* laid to rest the timeliness issue and the issue of federal question jurisdiction, neither of which were challenged beyond the appeal in *Plaquemines I*. Thus, following *Plaquemines I*, the sole issue going forward in *Riverwood* was whether federal officer removal applied. No one questions that *Plaquemines I*'s timeliness determination in favor of the defense, and the rejection of federal question jurisdiction in favor of the plaintiffs, applies with equal force to all of the removed SLCRMA cases. For those issues there is simply no basis to legitimately distinguish the other SLCRMA cases from *Riverwood*.

[7]  As described by Judge Feldman, in *Latiolais* the Fifth Circuit "overhauled its federal-officer jurisdictional test" by eschewing the "causal nexus" element of the test in favor of a new standard that encompassed a "broader and elusive" "related to" element. *Parish of Plaquemines v. Riverwood Prod. Co.*, No 18-5217, 2022 WL 101401, at *3 (E.D. La. Jan. 11, 2022).

whether federal officer jurisdiction applied. *Plaquemines I*, 7 F.4th at 365.

Unpersuaded that *Latiolais* changed the outcome, Judge Feldman issued his decision finding once again that the defendants were not entitled to remove the case under federal officer removal, that the case did not belong in federal court, and that the motion to remand should be granted.[8]  *Parish of Plaquemines v. Riverwood Prod. Co.*, No. 18-5217, 2022 WL 101401, at *3 (E.D. La. Jan. 11, 2022). The Fifth Circuit affirmed, *Parish of Plaquemines v. Chevron USA, Inc.*, No. 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022) ("*Plaquemines II*"), denied rehearing, denied rehearing en banc, and even denied the removing defendants' motion to stay issuance of the mandate while the defendants sought a writ of certiorari from the United States Supreme Court.

With no stay in place, the defendants in *Riverwood* filed their petition with the United States Supreme Court for review of the federal officer removal issue. The Fifth Circuit issued the *Riverwood* mandate on December 15, 2022, and Judge Sarah S. Vance, who was assigned the case following Judge Feldman's death, remanded the *Riverwood* action to state court. Given that the Fifth Circuit refused to issue a stay in *Riverwood*, and as a result *Riverwood* itself was returned to state court notwithstanding the pending writ application, the suggestion that the Court should delay ruling on the motions to remand in its own SLCRMA cases pending further litigation in federal court was not persuasive. (CA18-5238, Rec. Doc. 79, Order and Reasons at 6). Therefore, on

---

[8] It is not surprising that *Latiolais* did not change the outcome in *Riverwood* because Judge Feldman's decision in *Riverwood* did not turn on the eschewed causal nexus element of federal officer removal. Rather, Judge Feldman had explained why the removing defendants in *Riverwood* had not satisfied the "acting under" requirement for federal officer removal, and the test for that requirement had not been affected by *Latiolais*.

February 15, 2023, this Court remanded to state court Civil Actions 18-5238, 18-5262, 18-5265, which did not involve any World War II era conduct upon which to argue in support of federal officer removal. The Court noted when remanding those cases that if federal officer jurisdiction was lacking in *Riverwood* which *did* involve wartime activities, it certainly could not apply to a case that did *not* involve wartime activities. (Rec. Doc. 79, Order and Reasons at 6-7). Further, those cases did not involve a party with a World War II era refinery contract, which became the basis for the new theory of federal officer removal at issue in this case. And with the potential for federal question jurisdiction now firmly foreclosed by *Plaquemines I* and *Plaquemines II*, the defendants in Civil Actions 18-5238, 18-5262, and 18-5265 had no non-frivolous arguments to make in support of removal in those cases.[9]

The issue of the pending writ application in *Riverwood* has become a moot point because on February 27, 2023, after all of the briefing was concluded in this case, the United States Supreme Court denied the *Plaquemines II* writ application. *Chevron USA, Inc. v. Plaquemines Parish*, No. 22-715, 2023 WL 2227757 (U.S. Feb. 27, 2023). Thus, the Fifth Circuit's *Plaquemines I* and *Plaquemines II* decisions have now conclusively resolved the jurisdictional issues presented in *Riverwood*.[10]

---

[9] Moreover, the Court had reviewed the petition for certiorari filed in the *Riverwood* case and had concluded that even if both questions presented in the petition were answered in the affirmative, it would not affect the remand decision in Civil Actions 18-5238, 18-5262, and 18-5265. Those civil actions involved neither World War II era activities nor any defendant implicated by the refinery argument (discussed below) that the Court referred to (by the name "the Related Refinery Case argument") when remanding those other cases.
    A notice of appeal has been filed by the defendants as to the remand orders in Civil Actions 18-5265 and 18-5238.

[10] In *Auster*, Judge Summerhays concluded on remand that *Latiolais* did not change his

In short, *Riverwood* holds that the removal in 2018 was timely, federal question jurisdiction was not present, and none of the removing defendants' several theories for satisfying the "acting under" requirement for federal officer removal jurisdiction had merit, this latter issue being grounded on the removing defendants' World War II era activities and on World War II era refinery contracts that belonged to other parties. *Riverwood* dealt a heavy blow to the defendants, who had been arguing in this district for years (when opposing the plaintiffs' periodic attempts to adjudicate motions to remand in certain of the SLCRMA cases) that *Riverwood* would resolve jurisdictional issues that cut across all of the removed SLCRMA cases. While *Riverwood* was a lost cause, the defendants in the other SLCRMA cases like this one rallied to find a way to distinguish their cases from *Riverwood*, and hence a new refinery-based argument for federal officer removal was born. As explained in greater detail below, the Removing Defendants' new refinery argument purports to be based on an observation that the Fifth Circuit made in dicta in *Plaquemines II* pertaining to refineries that had federal contracts during the World War II era, and the potential for federal officer removal to be available for those refineries.

The remaining three SLCRMA cases pending in this Section, of which the instant case is one, involve World War II era oil production activities, that although conducted during a time of significant governmental regulation, will not (without more) suffice for

_____

decision as to federal officer removal as well. *Parish of Cameron v. Auster Oil & Gas, Inc.*, No. 18-cv-0677, 2022 WL 17852581 (W.D. La. Dec. 22, 2022). Judge Summerhays issued his decision after the Fifth Circuit had already affirmed Judge Feldman in *Plaquemines II*. *Auster* has been appealed but as of this writing the appeal is in its infancy.

federal officer removal—this is precisely what *Riverwood* dictates and the Removing Defendants have conceded this argument. But the Removing Defendants contend that this case involves a defendant who not only engaged in World War II era oil production activities in the Operational Area but who also used some of that Operational Area crude to perform under its own World War II era federal refinery contract, thereby distinguishing this case from *Riverwood* in a material and outcome-altering way. The availability of a federal forum for this case and the handful of SLCRMA cases that are still pending in federal court depends solely on whether the requirements for federal officer removal are satisfied based on the defendants' latest refinery-contract-based theory for federal officer removal.[11]

## II.

The plaintiffs herein maintain that the relevant jurisdictional factual and legal issues presented in the present case are indistinguishable from the *Riverwood* case and *Riverwood* therefore controls the removal/remand decision in this case. According to Plaintiffs, *Riverwood* implicitly rejected the very refinery argument that the Removing Defendants are making now, and this case should be remanded to state court without

---

[11]  The Court notes that very recently Judge Eldon E. Fallon of this district remanded two of his SLCRMA cases, Civil Actions 18-5206 and 18-5242. After explaining that he had kept his SLCRMA cases stayed based on the understanding that the outcome in *Riverwood* would be determinative of federal jurisdiction in all of the other SLCRMA cases in this district, Judge Fallon proceeded to address and reject the removing defendants' new federal officer removal theory based on a World War II era refinery contract. *Parish of Jefferson v. Destin Oper. Co.*, No. 18-5206, 2023 WL 2772023 (E.D. La. Apr. 4, 2023); *Parish of Jefferson v. Equitable Petrol. Corp.*, No. 18-5242, 2023 WL 2771705 (E.D. La. Apr. 4, 2023). So Judge Fallon has already rejected the same argument that is before the Court in the instant motion to remand. The Court agrees wholeheartedly with Judge Fallon's reasoning.

further delay.

According to the Removing Defendants, *Plaquemines II*, albeit in dicta, actually outlined the specific facts that would give rise to federal officer removal when World War II era activities are present, and this particular case presents the very scenario that the Fifth Circuit was referring to when distinguishing a non-removable case like *Riverwood* from a removable case like this one. To the point, this case involves a World War II era refinery contract unlike those relied upon in *Riverwood*, that satisfies the "acting under" requirement for federal officer removal where *Riverwood* failed. Therefore, so say the Removing Defendants, *Riverwood* does not control the remand decision here, this case satisfies all of the requirements for federal officer removal, and the plaintiffs' motion to remand should be denied.

The Court will not dwell on the reasons that it was persuaded that *Riverwood* would provide all of the answers necessary to adjudicate the propriety of removal in all of the other SLCRMA cases, including this one,[12] or that the defendants have used *Plaquemines II* as a guide to craft a new removal theory that navigates around the jurisdictional obstacles of *Riverwood*. The Court likewise will not dwell on the question of whether the ultimate rejection of federal officer removal in *Riverwood* by *Plaquemines II* applies with equal force to all of the remaining SLCRMA cases. Rather, the Court begins it analysis with *Riverwood* but proceeds to address the merits of the Removing Defendants' new theory for federal officer removal.

---

[12] Judge Fallon alluded to this in his reasons when granting the motions to remand filed in his cases. Those motions were granted, however, on the merits of the defendants' new theory of federal officer removal. See note 11 above.

The Court will assume the reader's familiarity with Judge Feldman's rulings in *Riverwood*, and the Fifth Circuit's *Plaquemines I* and *Plaquemines II* decisions.[13]  But in order to understand the specific removal argument that the Removing Defendants are making in this case and why they believe that this case succeeds where *Riverwood* failed, and to provide context for the dicta in *Plaquemines II*, a short synopsis of *Riverwood*'s theory of federal officer removal jurisdiction, and the reasons that it was rejected, is helpful.

As a reminder, the federal officer removal statute allows for "any officer (or any person **acting under** that officer) of the United States or of an agency thereof . . . for **or relating to** any act under color of such office . . ." to remove to federal court a civil action commenced in state court against him." 28 U.S.C. § 1442(a)(1) (emphasis added). Under this statute, the removing defendant has the burden of showing that 1) it has asserted a colorable federal defense, 2) it is a "person" within the meaning of the statute, 3) it has acted pursuant to a federal officer's (or agency's) directions, and 4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Plaquemines II*, 2022 WL 9914869, at *2 (citing *Box v. PetroTel, Inc.*, 33 F.4th 195, 199 (5th Cir. 2022)).

The first two prongs of the test were not problematic for the removing defendants in *Riverwood*; the third prong, often referred to as the "acting under" prong, presented

---

[13] For clarity, the Court points out that at times it refers to *Riverwood* when in context the Court is actually referring generally to some aspect of the Fifth Circuit's *Plaquemines I* and *Plaquemines II* decisions. The Court will at times refer specifically to *Plaquemines I* and *Plaquemines II* for points specific to one or the other of those opinions.

the stumbling block. The *Plaquemines II* panel declined to reach the fourth prong for

federal officer removal since it was a moot point.

The removing defendants in *Riverwood* were not officers of the United States or

of any agency of the United States—they were private corporate parties being sued for

their oil producing activities in the coastal parishes of Louisiana. As private parties, the

removing defendants could only remove under § 1442(a)(1) if they could establish that

they had "acted under" an officer or agency of the United States when they engaged in

the oil producing activities being challenged in the plaintiffs' lawsuit.

While a private party's contract with the federal government does not guarantee

satisfaction of "acting under," it certainly goes a long way when trying to establish that

requirement for federal officer removal.[14]  Of course the specific activities being

challenged in *Riverwood* (as in this case and all of the SLCRMA cases) were oil

production activities and no defendant in *Riverwood* (or any SLCRMA case including

this one) had a contract with the federal government for oil production at any time, much

less during the World War II era. The removing defendants in *Riverwood* therefore

crafted several theories as to why they had "acted under" a federal officer when

engaging in World War II era oil producing activities, theories which were based in large

part on the federal government's extensive regulation and oversight of the oil industry

during World War II. The removing defendants were convinced that the extensive

---

[14] *See, e.g., St. Charles Surgical Hospital, LLC v. Louisiana Health Service & Indemnity Co.*, 935 F.3d 352, 356 (5th Cir. 2019) (examining the terms of the contract at issue to search for the requisite level of guidance and control over the private party before concluding that the private party's contract with a federal agency satisfied the acting under prong).

government regulation and oversight that they operated under during World War II elevated them to the level of federal contractors, even in the absence of an actual contract. That theory was rejected both by Judge Feldman and by the Fifth Circuit because Supreme Court precedent foreclosed the suggestion that a person could be acting under a federal officer when operating in an industry regulated by the federal government, regardless of how extensive that regulatory scheme might be. *See Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007) (addressing and rejecting federal officer removal by a cigarette manufacturer). Complying with extensive federal regulations neither created a "special relationship" with the government nor rose to the level of acting under the federal government's direction for purposes of federal officer removal jurisdiction.

The removing defendants also argued in *Riverwood* that at the very least they should be treated as federal subcontractors because even though they had no contracts of their of their own with the federal government for oil production, *they did have contracts with refineries who had contracts with the federal government* to deliver fuel to be used in the war effort. But the panel rejected that argument in *Plaquemines II* because the removing defendants had not shown that they were subjected to the federal government's guidance or control as subcontractors. 2022 WL 9914869, at *4. Afterall, the removing defendants in *Riverwood* were oil producers not oil refiners and they could not satisfy the "acting under" prong by piggy-backing on federal contracts to which they were not parties, at least not in the absence of demonstrating the necessary

federal guidance or control.[15]

It was in response to the removing defendants' subcontractor argument, which was grounded on a refinery contract, that the Fifth Circuit quoted in dicta a sentence from Judge Feldman's opinion on remand that has become the basis of the new federal officer removal argument: "As the district court noted, the 'refineries, who had federal contracts and acted pursuant to those contracts, can *likely* remove [under § 1442], but that does not extend to [parties] not under that contractual direction." *Plaquemines II*, 2022 WL 9914869, at *4 (quoting *Plaquemines*, 2022 WL 101401) (emphasis added). This single sentence observation has helped embolden the Removing Defendants in trying to distinguish the remaining SLCRMA cases from *Riverwood*.

Although all of the *Riverwood* defendants were sued for oil production activities (not refining activities), at least one of those defendants, Humble Oil (predecessor to Exxon Mobil), had been an oil producer *and* a refiner during World War II. Humble Oil had not only operated the Potash Field, which was part of the Operational Area in *Riverwood*, but its refinery had also supplied aviation fuel to the government during World War II pursuant to a federal contract. For reasons not explained in *Riverwood*, Exxon did not rely on that contract when arguing in favor of federal officer removal,

---

[15] Note, not being a named party to a federal contract is not fatal to establishing that a private party was "acting under" a federal officer so long as the contract being relied upon imposes the required level of supervision and control over the party relying on that contract for federal officer removal. *See Cloyd v. KBR, Inc.*, No. 21-20676, 2022 WL 4104029, at *3 (5th Cir. Sept. 8, 2022) (not published); *Trinity Home Dialysis, Inc. v. Wellmed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at *3 (5th Cir. Mar. 20, 2023) (not published). In *Riverwood* none of the refinery contracts relied upon demonstrated any level of supervision or control vis à vis the removing defendants and this was fatal to their position.

*Riverwood*, 2022 WL 101401, at *7 n.14 (noting that Humble Oil was not relying on its own refinery contract in support of its "acting under" argument), instead relying on the federal contracts of the refineries that Humble had supplied with the Potash Field crude. In other words, in *Riverwood* none of the Potash Field crude production, which was the basis of the plaintiffs' allegations in the case, was actually sent to Humble's refinery to perform under its own federal contract.[16]

Obviously, the removing defendants in *Riverwood* were not blind to the potential for federal officer removal based on World War II era refinery contracts with the federal government because they tried mightily to use them to their advantage. *Riverwood* expressly rejected the notion that an oil producer defendant that sent its Operational Area crude to another company (including an affiliate company) for refining under a federal contract "acts under" a federal officer for purposes of removal. It bears repeating that the problem with the refinery contracts in *Riverwood* was not the defendants' lack of privity with the federal government but rather that the refinery contracts presented in *Riverwood* did not impose the necessary level of federal guidance or control over the oil producer defendants who wanted to rely on those contracts for federal officer removal.

The scenario presented in the instant case involves removal by a World War II era oil producer defendant that, like Humble Oil in *Riverwood*, also happened to have a federal refinery contract during World War II but who *did* refine some of its Operational Area crude in performing under that federal contract. The Removing Defendants point

---

[16] According to Plaintiffs, the Potash Field crude was sent to a Humble affiliate for refining.

out that in the instant case Gulf Oil Corp., a predecessor to removing defendant

Chevron U.S.A., Inc., was acting as *both* a refiner who provided refined petroleum

products to the government pursuant to a contract, *and* as a producer of crude oil in the

Operational Area of this case. Whereas in *Riverwood* no individual corporate defendant

produced the crude that it refined pursuant to a federal contract, the Removing

Defendants point out that Gulf Oil produced oil from the Operational Area in this case

and transported it to its own refinery, who then performing under its wartime government

contract, used that same crude to produce aviation fuel for the government. The

Removing Defendants contend that such a defendant would satisfy the "acting under"

prong of federal officer removal, the prong where *Riverwood* failed, rendering removal to

federal court proper.

      As the Court explains below, the refinery contract in this case is no different than

the refinery contracts relied upon in *Riverwood* because it imposed no federal

supervision or control whatsoever over Gulf Oil's oil production activities. One aspect of

*Riverwood* that does cut across all of the SLCRMA cases is that the defendants cannot

show that any one of them acted under a federal officer when engaging in oil production

activities during World War II. So crucially, the Removing Defendants have altered their

"acting under" argument by abandoning any effort to establish that any defendant acted

under a federal officer when engaging in oil production activities, which is what this

lawsuit and all of the SLCRMA lawsuits are about. The Removing Defendants now

contend that the more relaxed post-*Latiolais* connection test relieves them of that

burden under the facts of this case. Whereas in *Riverwood* the defendants struggled

and failed to prove that they had acted under a federal officer when engaging in oil production activities, the Removing Defendants' new theory is that defendant Gulf Oil acted under a federal officer when refining aviation fuel during World War II pursuant to a federal supply contract. Then since Gulf sent some of the Operational Area's crude to its refinery to use when performing under the federal contract, Gulf's crude oil production activities, including the activities being challenged in this lawsuit, are related to the performance under the refinery contract, thereby making the case removable.

### III.

The Court now turns to the Motion to Remand filed in this action and to the merits of the Removing Defendants' current argument in support of federal officer removal for this case.

The Removing Defendants' argument in support of federal officer removal in this case is based on the wartime activities of Gulf Oil Corp., a predecessor to defendant Chevron U.S.A., Inc., who is one of the Removing Defendants.[17]  During World War II, Gulf was an integrated oil company having both "upstream" oil production operations such as those being challenged in the Operational Area delineated in this lawsuit, and "downstream" operations such as the refining of crude oil into gasoline, fuel, and other petroleum products. No one would dispute that crude oil is the primary component that a refinery uses to produce fuel and that was certainly the case in the 1940s. But upstream

---

[17]  So long as a single claim satisfies the federal officer removal statute, the entire case may be removed. *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016) (citing 14C Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 3726 (4th ed.2015)), *overruled on other grounds, Latiolais*, 951 F.3d at 296 n.9.

oil producing operations in the field and downstream refining operations at the plant are "two entirely separate operations requiring different skills, and different operations at different locations." *Destin Oper. Co.*, 2023 WL 2772023, at *3) (Fallon, J.); *Equitable Petrol. Corp.*, 2023 WL 2771705, at *3 (Fallon, J.). The separate functions may be performed by different companies or a larger company may do both, as Gulf Oil was doing during World War II.

The Removing Defendants have produced a contract dated August 10, 1942, between Gulf Oil Corporation and Defense Supplies Corporation, a federal entity.[18] (Rec. Doc. 63-2 at 90). The contract is a sales or supply agreement for Gulf to refine for and sell to the government 100-octane aviation gasoline to be produced at its refinery located in Port Arthur, Texas. The agreement is more than just a refining/supply agreement because Gulf agreed to expand its Port Arthur, Texas facility in order to increase its production capacity for aviation gas for the government. In return, the government agreed to pay Gulf millions of dollars upfront toward the expansion of the privately-owned facility. The contract does not mention crude oil production.

The Court will assume that in light of the federal contract, Gulf was acting under a federal officer to produce military petroleum products at its refinery in Port Arthur, Texas during World War II.[19]

---

[18] According to the Removing Defendants' expert, the Defense Supplies Corporation ("DSC") was a government corporation organized in August 1940 as a subsidiary of the Reconstruction Finance Corporation to finance plant expansion and purchase 100-octane aviation gasoline. (Rec. Doc. 63-1, Declaration of Alfred M. ("A.J.") Gravel at 11 n.7).

[19] The plaintiffs dispute that the Gulf Oil refining contract contains the requisite level of supervision and control necessary to satisfy the acting under prong. *See* note 14 above.

Next, in the interest of resolving any factual disputes in favor of maintaining federal jurisdiction,[20]  the Court will assume that in 1942, on a regular basis, Gulf extracted oil from the Operational Area at issue in this lawsuit, and transported that crude to its Port Arthur refinery, where it was used to make aviation fuel for the government under the contract. The Removing Defendants' expert's report refers only to a March 1942 delivery of crude from West Bay Field to the Port Arthur refinery, (Rec. Doc. 63-1, Gravel declaration ¶ 148), which predates the federal contract but the Court will not belabor this point. Also, the Court will assume that production was ramped up in the Operational Area during World War II at least in part for the purpose of making aviation fuel in Port Arthur, Texas in accordance with the federal contract.

Having made the foregoing legal and factual assumptions in favor of the Removing Defendants, one need only follow the crude as it traveled from the Operational Area of the Louisiana coast to the refinery in Port Arthur, Texas, to conclude that the World War II era oil production operations in West Bay field are connected to Gulf's aviation gas refining in Port Arthur, the latter being conducted pursuant to a federal contract. Recognizing, as the Removing Defendants do, that crude oil production, much less the operations being challenged in this case, were not under federal direction, the final piece of the federal officer removal puzzle turns on a legal

---

[20]  Though generally remand to state court is favored when removal jurisdiction is questionable, removal jurisdiction under the federal officer removal statute must be broadly construed resolving any factual disputes in favor of federal jurisdiction. *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 671 (E.D. La. 2007) (Fallon, J.) (citing *Willingham v. Morgan,* 395 U.S. 402, 407 (1969); *Louisiana v. Sparks,* 978 F.2d 226 (5th Cir.1992)). Unlike other removal statutes, the analysis proceeds "without a thumb on the remand side of the scale." *Trinity Home Dialysis*, 2023 WL 2573914, at *2 (citing *Latiolais*, 951 F.3d at 290).

question—can the related to prong of federal officer removal as broadened in *Latiolais* be used to relieve the Removing Defendants of having to show—which they cannot do—that a federal officer directed Gulf's oil production activities. Or put another way, can the Removing Defendants satisfy the acting under prong by relying on federal directives governing conduct (refining) that is not implicated by the plaintiffs' lawsuit.

In *Latiolais* the en banc Fifth Circuit recognized that federal officer removal is not just for acts under a federal officer but also for those "relating to," or connected or associated with those federal acts. *Latiolais*, 951 F.3d at 296. So for instance, in *Latiolais* a ship builder who had refurbished a navy vessel pursuant to a government contract that required asbestos was allowed to remove the plaintiff's suit grounded on the defendant's negligence in failing to warn him about the hazards of asbestos and to provide adequate safety equipment—conduct that was not dictated by the government contract and therefore was not taken pursuant to a federal officer's directions. Removal was allowed because it was not necessary to show that any specific government directive was the moving force of (caused) the negligence being sued upon. It was enough that the plaintiff's negligence claims were related to a federal directive to use asbestos in the refurbishing of the vessel.

The Removing Defendants' position is that just like the defendant in *Latiolais* could remove without showing that the complained-of conduct (failure to warn and failure to provide safety equipment) occurred at the behest of federal officers, they do not have to show that their oil production activities occurred at the behest of federal officers. It is enough, say the Removing Defendants, that Gulf's oil production activities

are related to its activities as a refiner acting under a federal officer, and that both of these sets of activities came together in an integrated corporate entity. And the Removing Defendants contend that to hold them to any other standard would be to improperly conflate the "acting under" and "for or relating to" elements of the test in a way that simply reimposes the causal nexus requirement that the Fifth Circuit jettisoned in *Latiolais*.

To be sure, the Removing Defendants' latest argument in support of federal officer removal is creative and does have a superficial appeal to it. But the Court is persuaded that the argument fails because this case satisfies neither the acting under requirement nor the related to requirement for federal officer removal. The acting under and related to requirements for federal officer removal are distinct and both must be satisfied. *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021). The Removing Defendants cannot use the separate "related to" prong to circumvent the requirements of the distinct "acting under" prong when the federal contract that they are relying upon contains no federal directives whatsoever—none—related to the plaintiffs' allegations in this lawsuit.

While *Latiolais* abandoned the stringent causal nexus test to recognize that the specific conduct being challenged need not have been directed by a federal officer, it nonetheless tethered its analysis to the specific federal directive that the plaintiff's claims were related to, *i.e.*, the directive to use asbestos in the refurbishment of a navy vessel. The defendant was acting under a federal officer when refurbishing the vessel for the navy, and in particular when using asbestos in the project, but it would no longer

be necessary after *Latiolais* to show that any specific government directive was the cause of the negligence being sued upon. So while post-*Latiolais* the reach of the related to prong brings conduct not specifically directed by a federal officer into the scope of removal, the conduct must relate nonetheless to carrying out the directives of a federal officer. This is not the same as saying that a federal officer must have directed the specific conduct being challenged.

This case lacks any connection between crude oil production activities and the directives of a federal officer as dictated by the federal contract. The Removing Defendants have attempted to elide past that problem by defining the federal directive as broadly as possible, *i.e.*, produce military petroleum products at the refinery in Port Arthur, Texas, and then creating a factual connection between oil production in Louisiana to federal activity at the refinery. But every case that the Court has reviewed, including the post-*Latiolais* decisions, that grounds federal officer removal on relatedness to a federal contract, examines the directives of that contract when determining whether all of the requirements for federal officer removal are met, and in particular whether the plaintiff's claims relate to the directives of a federal officer.

But in this case the Removing Defendants fail to point to a single directive in the Gulf contract that touched upon its upstream oil production activities in Louisiana or anywhere else for that matter. No directive in the contract has anything to do with upstream oil production. In fact, the contract does not mention where the Port Arthur refinery was to get the large amounts of crude oil that would be necessary to feed the refinery although part (d) of the Price Escalation section does allude to the possibility

that Gulf may at times purchase refining components from other suppliers. (Rec. Doc. 63-2at 9). The contract is simply not concerned with where or how Gulf would obtain the crude oil necessary to produce the fuel that was to be sold to the government at the Port Arthur refinery. While anyone can infer that performance under the contract would require a lot of crude, the contract is utterly silent as where the crude oil was to come from. The contract did not direct, require, or even suggest that Gulf produce its own crude in order to meet its contractual obligations.

So, in no way did the government direct Gulf to produce its own crude, and in no way did Gulf agree to do that as part of the agreement. The agreement does not even allude to the possibility of Gulf producing its own crude to fulfill the contract. The contract does not concern itself with adequate crude supplies, or assurances of ramped up production. No direction or hint is given in that area. Gulf could have sourced the crude from anywhere based on economics, and Gulf obviously left its options open on that front without committing itself. Gulf had complete latitude under the contract to forego producing any crude and instead to buy it on the open market.

In *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 455 (5th Cir. 2021), the Fifth Circuit recognized that a defendant may be acting under the government pursuant to a contract—like Gulf was in 1942—but it is possible that the alleged conduct underlying the plaintiffs' claims is not connected or associated with (or related to) any federal directive from the government. In other words, a defendant that acts under the government for some purposes does not necessarily act under the government "for all purposes." *Id.*

In this case, Gulf Oil may have acted under a federal officer when refining oil in Port Arthur, Texas but it did not act under a federal officer when producing that oil in Louisiana. And because the Gulf refinery contract only contains directives pertaining to refining, there is no federal directive in the contract to tether Gulf's oil production activities to, including the specific oil production activities at issue in this lawsuit. And Gulf Oil's integrated corporate structure does not change the analysis because just as in *Riverwood*, the problem is not necessarily one of privity but rather that the refinery contracts contain no federal control and supervision as to oil production activities. As such, even if the Removing Defendants have satisfied the acting under requirement for "some purpose" like refining they cannot relate the plaintiffs' allegations to any federal directive present in this case. As Judge Fallon noted when remanding his similarly situated SLCRMA cases, under the defendants' theory a company with a single federal contract could remove essentially any claim for activities outside the scope of the contract but arguably connected to it, which may mean virtually anything.

Finally, the dicta in *Plaquemines II* that the Removing Defendants rely upon does not support their new theory for federal officer removal and it is a far cry from demonstrating that the Fifth Circuit believed that an oil producer who acted as both a producer and a refiner pursuant to a federal contract could remove so long as it refined some of the crude from the Operational Area in that case. The defendants read much into a single unremarkable statement that refineries with their own federal contracts would "likely" be able to remove. But the Fifth Circuit would not have been suggesting that refineries could remove for claims based on oil production activities because

refineries do not produce crude and they do not engage in oil producing activities like those being challenged in this lawsuit. Common sense would dictate that what the appellate court meant was that the refineries whose federal contracts the *Riverwood* defendants were trying to latch onto could satisfy the acting under requirement and remove if they had been sued for activities taken pursuant to the federal directives in their refinery contracts, *i.e.*, refining activities. The Removing Defendants' reliance on the Fifth Circuit's dicta in *Plaquemines II* is misplaced.

In sum, even beyond the holdings of *Riverwood, Plaquemines I*, and *Plaquemines II*, the Court is persuaded that the Removing Defendants' current refinery-contract-based argument lacks merit, that federal officer removal jurisdiction does not apply to this case, and that the plaintiffs' motion to remand must be granted.

Accordingly and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Remand (Rec. Doc. 62)** filed jointly by the plaintiff, the Parish of Plaquemines, and the plaintiff-intervenors the State of Louisiana, through the Louisiana Department of Natural Resources, Office of Coastal Management, and its Secretary, Thomas F. Harris, and the State of Louisiana *ex rel.* Jeff Landry, Attorney General is **GRANTED**. This matter is **REMANDED** to the state court from which it was removed.

April 18, 2023

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE